UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,                          Case No. 3:23-cr-575-4

        Plaintiff,

v.                                          MEMORANDUM OPINION
                                                     AND ORDER

Hiren Jagdishbhai Patel,

        Defendant.

## I.     INTRODUCTION AND BACKGROUND

Defendant Hiren Jagdishbhai Patel was convicted of one count of money laundering conspiracy, in violation of 18 U.S.C. § 1956(h), and one count of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i). The indictment arose after an investigation uncovered evidence Patel and his seven co-defendants were participants in a "phantom hacker scam[1]" resulting in victim losses alleged by the government to total nearly four million dollars. Patel pled guilty to both counts of the Second Superseding Indictment (Doc. No. 77), pursuant to a plea agreement between the parties. (Doc. No. 113).

The government has uniformly asserted Patel and his co-defendants should be held liable, jointly and severally, for documented restitution requests from 20 victims, totaling $3,940,438. (Doc.

---

[1] The indictment alleges a "phantom hacker scam" is a fraudulent scheme in which someone poses as a customer services employee for a company or bank and targets potential victims with claims that the victim's account has been hacked or compromised. (Doc. No. 77). The first person then directs the victim to another scammer posing as a law enforcement agent, who instructs the victim to transfer their funds into a specified bank account or to another third-party for "safe-keeping." The victim's funds are then stolen. (*Id.*).

Nos. 185, 231-1[2]), under the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A. At Patel's sentencing on April 3, 2025, Patel objected through his counsel to the requested amount of restitution. The government held firm in its position. Pursuant to the restitution statute's provision for a deferred ruling for up to 90 days, I otherwise proceeded with sentencing, but withheld judgment on determination of restitution to entertain further briefing on the issue from the parties. Defendant filed his restitution memorandum (Doc. No. 260). In addition to its omnibus sentencing memorandum (Doc. No. 185), and a revised and corrected request for restitution (Doc. No. 231-1), the government filed more than 400 pages of documents supporting its request for restitution. (Doc. Nos. 224, 265).

Patel stands upon three objections to the government's restitution request, first raised at the sentencing hearing and documented in his restitution memorandum (Doc. No. 260):

> 1) the plain text of the MVRA limits restitution to a defendant's relevant conduct,
>
> 2) restitution was bargained for in the plea agreement and based on Hiren's culpability, and
>
> 3) the Government has not shown the victims' losses by a preponderance of the evidence.

## II.  DISCUSSION

I will address all of Patel's objections and the government's request for "full" restitution.

**A. MVRA "limits"**

First, Patel argues the plain text of the MVRA limits restitution to his relevant conduct. While this is true in a broad sense, Patel was convicted of a money laundering conspiracy count, and

---

[2] Although Doc. 231-1 was not specifically filed as to Patel, it includes the corrected list of victims and their loss amounts.

2

it is well-established he is held to conduct and losses within the scope of the conspiracy, provided he was a member of the conspiracy and the conduct was reasonably foreseeable. This *Pinkerton*-associated liability is solidly grounded. The language of the MVRA addresses the status of victims and a defendant's liability for restitution by defining a "victim" to include "any person directly harmed by the defendant's criminal conduct in the course of the . . . conspiracy."

To say that Patel is only responsible for named overt acts, or conduct in which he specifically played a role, is not a suitable limitation in the context of a conspiracy case. Accordingly, I reject his assertion that "the plain text" of the MVRA limits his liability for restitution to his "relevant conduct" as he views his conduct. And Patel's reliance on *United States v. Comer*, 93 F.3d 1271 (6th Cir. 1996), and *United States v. Tunning*, 69 F.3d 107 (6th Circuit 1995), is misplaced. The government is not requesting restitution on uncharged, acquitted, or dismissed counts – only on the offenses of conviction, including acts associated with the conspiracy and co-conspirators.

### B. Restitution was "bargained for" in the plea agreement

Patel's second assertion is that restitution was "bargained for in the plea agreement" and based upon his culpability. But the terms of the plea agreement do not readily support this interpretation. Patel's specific conduct is addressed in two provisions of the plea agreement. The first is an agreement as to the offense guideline, which appears in paragraph 17 of his plea agreement. (Doc. No. 113, at 6-7). Of note in this context is an enhancement under U.S.S.G. § 2B1.1(b)(1)(F) based upon a loss amount in excess of $150,000, which the parties agreed would add ten points to Patel's offense level calculation.[3]

---

[3] This guideline provision adopts a chart for assessment of offense level points based upon a bracketed loss amount. Here, the 10 point enhancement reflects a loss amount of more than $150,000, but less than $250,000. Above a loss of $250,000, for example, the enhancement would be plus 12.

3

Patel asserts the second material reference in his plea agreement is contained in the "Factual Basis and Relevant Conduct" provision of the agreement, in paragraphs 22 and 23. (Doc. No. 113, at 8-10). While paragraph 22a restates general language from the money laundering conspiracy statute and attendant indictment, paragraph 22b and its six subparts state with particularity the losses incurred by several victims. Paragraph 22c then states that the "amount of the loss caused by Defendant and/or directly attributable to his actions and reasonably foreseeably was more than $150,000." That paragraph goes on to detail other facts and circumstances of the offense which support other enhancements to the offense level calculation, including a substantial portion of the illegal scheme taking place outside of the United States, and substantial financial hardship to, and the vulnerability of, some victims.

Finally, the plea agreement contains a restitution provision in paragraph 6, which states in its entirety: "The Court may order Defendant to pay restitution as a condition of the sentence, probation, and/or supervised release."

Patel argues that the provision for loss amount of more than $150,000, but not higher than the bracketed range of up to $250,000, coupled with the summary of evidence, restricts the scope of restitution that can be properly awarded. Patel correctly states the framework for the scope of restitution as explained by the circuit in *Gray*: if the conviction was at trial, look to the indictment; but if the conviction was by plea, look to "the plea agreement, the plea colloquy, and other statements made by the parties." *Gray*, 121 F.4th, at 587. But his conclusion that the specific conduct referenced is determinative of the scope of restitution is misplaced.

The restitution provision is a general one and without limitation. No cross-reference is made to other portions of the plea agreement – neither the loss amount for guideline purposes, nor specific instances of conduct listed in the factual basis for the guilty pleas. And determination of loss amount for the correct offense level for Guideline purposes is not the same as determining the

4

proper amount of restitution. They are decidedly different concepts. The parties were free to bargain as to the amount of restitution in the agreement, if they chose to do so. They did not. In the absence of a connection to other provisions or limitation on the scope of restitution, I cannot restrict the scope of restitution to those other portions of the agreement, with one exception.

The scope of the government's reach for restitution isn't limitless, and the relevant period of Patel's involvement in the conspiracy matters. The factual basis and relevant conduct section makes reference to Patel's participation in the conspiracy "[f]rom September 2023 to October 2023."[4] While many of the victims of this conspiracy incurred compensable losses with that two-month time frame, three of the identified victims sustained losses outside of that period: D.R. on November 3, 2023, for $120,500; D.N. on November 4, 2023, for $321,275; and D.E. on November 9, 2023, for $285,000. (Doc. No. 185, at 10). Since they are outside of that date range, they may not be properly included in an order of restitution under the MVRA, and I will exclude them from any calculation. See *Gray, supra*.

### C. The government failed to carry its burden

Patel's final argument is that there is not a sufficient evidentiary basis for awarding all of the victims the amounts requested. I have reviewed his arguments as well as the large submission of documents in support of restitution, both victim impact statements and other documents supporting losses for possible restitution. I find the government has met its burden by a preponderance of the evidence of establishing those losses in its submission of February 20, 2025 (Doc. No. 185 (and as corrected in Doc. No. 231-1)), less those without any claimed damages or otherwise struck by the

---

[4] This is in contrast to the language in Count 1 of the Second Superseding Indictment, which references the time period of the conspiracy as "[f]rom in or around May of 2023 to in or around November of 2023…." (Doc. No. 77). But again, as this is a plea, under *Gray*, I look to the language of the agreement for the time period of the conspiracy.

government from the list, and order payment to all remaining victims pursuant to that schedule, less the three victims referenced above.

### III. CONCLUSION

For the reasons stated above, I overrule Patel's objections to the government's request for restitution. Total restitution is ordered against Hiren Patel, jointly and severally with his co-defendants, in the amount of $3,213,663 (consisting of the government's total requested restitution amount of $3,940,438, as corrected, less the three victims excluded above whose losses were sustained in November 2023, outside the September-October 2023 conspiracy window stated in the factual basis of the plea agreement.) Specifically, restitution is awarded to the persons and in the amounts in the government's submission in Document 231-1 for the following victims: Numbers 1-2, 4-8, 10, 12-16, 20-23, all inclusive.

Restitution is due and a payable now. To the extent Patel is unable to pay this restitution, payment will commence with 60 days of the beginning of his supervised release, and is to be paid monthly in the amount of at least ten percent of his gross monthly income, until paid in full. I waive any interest requirement.

So Ordered.

                                        s/ Jeffrey J. Helmick
                                        United States District Judge